**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **BRANDON CHAPPO,**<br>14572 Winter Stay Drive<br>Winter Garden, Florida 34787<br><br>**PLAINTIFF,**<br><br>v.<br><br>**THE RALLY GROUP, LLC,**<br>c/o Bruce L. Waterhouse, Jr.<br>1400 Republic Building<br>25 West Prospect Avenue<br>Cleveland, Ohio 44115<br><br>*Also serve at:*<br>c/o The Rally Group, LLC<br>333 West Main Street<br>Norwalk, Huron County, Ohio 44857<br><br>**DEFENDANT.** | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT AND JURY DEMAND** |

Now comes Plaintiff Brandon Chappo ("Chappo"), by and through undersigned counsel and for his complaint (the "Complaint") against Defendant The Rally Group, LLC ("Rally Group"), states as follows:

## PARTIES

1. Chappo is a citizen of Florida.

2. Upon information and belief, Rally Group is an Ohio limited liability company with its principal place of business in Ohio.

3. Upon information and belief, the members of Rally Group are citizens of Ohio.

4. Upon information and belief, Rally Group is in the business of renting real property.

5. Chappo is a prior tenant of Rally Group.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship in that Chappo is domiciled in Florida and, upon information and belief, the members of Rally Group are domiciled in Ohio.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as a substantial amount of the events giving rise to this action occurred in this judicial district and, upon information and belief, Rally Group resides in this judicial district.

## FACTUAL ALLEGATIONS

8. In or around July 2018, Chappo leased certain real property commonly known as 2438 Tremont Avenue, Unit #2, Cleveland, Ohio 44113 (the "Rental Property") from Rally Group.

9. At the time Chappo moved into the Rental Property, he was working a Flight Data Communications Specialist.

10. Approximately thirteen months after Chappo moved into the Rental Property, he started to experience various severe symptoms, which he had never experienced before, including, but not limited to, headaches, dizziness imbalance, and cognitive, neurological, and gastrological issues, fatigue, insomnia, etc.

11. Chappo spent months visiting a variety of doctors attempting to find what was causing his illness. Eventually, on or about August 6, 2020, a physician at the Cleveland Clinic confirmed that Chappo's symptoms were caused by his exposure to mold and a mold allergy.

12. The Rental Property contains a basement, which houses a laundry area, an HVAC system, and a storage area.

13. Water consistently accumulated in the basement due to a clogged washer drain and a potential foundation leak.

14. Douglass R. Fawcett, a member of the Defendant Rally Group, was frequently in the basement of the Rental Property during the time that Chappo resided there.

15. Mr. Fawcett stored personal property in the basement of the Rental Property.

16. Upon information and belief, Mr. Fawcett was aware that the water frequently accumulated in the basement.

17. On July 31, 2020, Chappo hired an inspector to examine his apartment and the basement for mold. (The results of the environmental report came out on August 7, 2020)

18. When Chappo's inspector examined the basement area, he immediately noticed the presence of surface mold on the floor joists and decking under the floor above the basement. The inspector lifted mold samples from those areas through tape lifting. He also tested the air in the basement and Chappo's apartment.

19. The inspector found that high concentrations of two types of molds (i.e., Aspergillus and Penicillium) grew in the basement on the floor joists and decking under the floor above the basement. The inspector also found elevated levels of the same types of molds in the air in the basement and Chappo's apartment. The inspector reported that "the mold found in the basement is having a negative impact on the air quality in [Chappo's] apartment."

20. The foregoing types of molds tend to exist in areas that suffer from chronic water exposure and can create a nephrotoxic, immunotoxin, and carcinogenic mycotoxin called "Ochratoxin A" and a mycotoxin called "Citrinin." Ochratoxin A exposure can cause kidney disease and adverse neurological effects. Exposure tends to occur through water-damaged buildings and contaminated foods. Citrinin exposure can cause neuropathy and suppression of immune responses. Exposure tends to occur through ingestion, inhalation, and skin contact. Mycophenolic acid (MPA) is an antifungal, antibacterial, and antiviral mycotoxin acid. It is

produced by the Penicillium fungus. MPA is an immunosuppressant which inhibits proliferation of B and T lymphocytes. MPA exposure can increase the risk of opportunistic infections such as clostridia and Candida.

21. Mr. Fawcett and the Rally Group knew, or should have known, about the frequent water accumulation in the basement.

22. Mr. Fawcett and the Rally Group knew, or should have known, about the mold growth in the basement.

23. A landlord exercising reasonable care should have discovered the mold issue when frequenting the basement.

24. After the mold inspection, Chappo moved out of the Rental Property.

25. Chappo is still working with doctors to treat his symptoms.

26. A urine analysis confirmed toxic levels of mycotoxins in Chappo's body.

27. Due to Chappo's symptoms caused by the mold, he has incurred significant damages.

28. First, his symptoms forced him to cease acting as a Flight Data Communications Specialist and obtain a fully remote administrative position with the FAA.

29. Second, he incurred significant medical bills attempting to determine the cause of his symptoms and will continue to incur significant medical bills as his treatment continues.

30. Third, the presence of mold forced him to dispose of approximately two-thirds of his personal property, all of which was not covered by insurance.

31. The prolonged illness and financial distress caused by the toxic mold further caused Chappo a significant loss of enjoyment of his life.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE PER SE

32. Chappo restates and incorporates by reference the above paragraphs as if fully set forth herein.

33. A landlord's failure to maintain or repair a rental property in violation of a landlord's obligation under R.C. 5321.04(A) constitutes negligence per se.

34. Rally Group, as a landlord, has a statutory responsibility with respect to the Rental Property under R.C. 5321.04(A) to:

    a. comply with the requirements of all relevant building, housing, health, and safety codes that materially affect health and safety;

    b. make all repairs and to do whatever is reasonably necessary to put and keep the property in a fit and habitable condition;

    c. keep all common areas of the property in a safe and sanitary condition;

    d. maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, supplied by them; and

    e. supply reasonable heat at all times.

35. Rally Group violated R.C. 5321.04(A) when it allowed for the accumulation of water and mold, which was toxic and could cause ailment (i.e., Chappo's severe symptoms), as it failed to (i) cause the Rental Property to comply with the requirements of all relevant building, housing (i.e., § 371.10(a) of the Cleveland Housing Code), health, and safety codes that materially affect health and safety; (ii) make all repairs and to do whatever is reasonably necessary to put and keep the Rental Property in a fit and habitable condition; (iii) keep all common areas of the Rental Property (i.e., the basement air and floor joists and decking under the floor above the basement) in a safe and sanitary condition; or (iv) maintain in good and

safe working order and condition all plumbing fixtures and appliances (i.e., the clogged washer drain), supplied by them.

36. Upon information and belief, by frequenting the basement for storage purposes, Rally Group's member or agent had notice or constructive notice of the water and mold accumulation.

37. Chappo is within the class of people that R.C. 5321.04(A) was intended to protect (i.e., tenants of rental properties).

38. Chappo's injury is the type of harm against which R.C. 5321.04(A) was designed to protect (i.e., the consequences associated with landlords' defectively maintained property).

39. As a direct and proximate result of the above-referenced negligence per se, Chappo has been damaged in excess of $75,000.00, in an amount to be determined at trial.

## COUNT II – NEGLIGENCE

40. Chappo restates and incorporates by reference the above paragraphs as if fully set forth herein.

41. Rally Group, as a landlord, owed a common law duty to Chappo to exercise reasonable care to keep the Rental Property retained in its control for the common use of its tenants in a reasonably safe condition.

42. Upon information and belief, by frequenting the basement for storage purposes, Rally Group's member or agent had notice or constructive notice of the water and mold accumulation (i.e., knew or should have known) and did not remove or correct the issues within a reasonable time.

43. Rally Group breached its duty by allowing water and mold to accumulate in the basement air and on the floor joists and decking under the floor above the basement.

44. As a direct and proximate result of the above referenced negligence, Chappo has been damaged in excess of $75,000.00, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Chappo prays for judgment against Rally Group for that amount of money which will fully and fairly compensate him for his severe symptoms caused by the accumulation of water and mold, of which the amount exceeds $75,000.00 and is to be determined at trial, including, without limitation:

1. Past medical bills;

2. Lost income and benefits;

3. Past pain and suffering;

4. Future pain and suffering;

5. Loss of enjoyment of life;

6. An award of post-judgment interest;

7. An award of reasonable attorneys' fees and costs; and

8. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted,

*/s/ Bradley M. Gibson*
Bradley M. Gibson (0087109)
Jennings D. Kleeman (100262)
FINNEY LAW FIRM, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
(513) 943-6661
(513) 943-6669 (fax)
Brad@FinneyLawFirm.com
Jennings@FinneyLawFirm.com
*Attorney for Chappo*

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

>   */s/ Bradley M. Gibson*
>   Bradley M. Gibson (0087109)